******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# KRISTINE S. ANTHIS *v.* ROBERT D. WINDOM
## (AC 42183)

Bright, Moll and Bear, Js.

*Syllabus*

The plaintiff sought to recover damages allegedly sustained as a result of the defendants' negligence and recklessness, arising out of an incident in which the defendant's motor vehicle struck the front of the plaintiff's neighboring home. Prior to trial, the court denied the defendant's motion in limine seeking to preclude the plaintiff from offering evidence regarding her home repair costs, which he asserted were paid for by the plaintiff's homeowners insurer. The jury returned a verdict in favor of the plaintiff, and the court thereafter denied the defendant's motion for remittitur and rendered judgment for the plaintiff, from which the defendant appealed to this court. Subsequently, the court denied the defendant's motion to open the judgment, in which he argued that a payment made by his automobile liability insurer to the plaintiff's homeowners insurer constituted a payment by him, such that requiring him to pay the economic damages awarded by the jury would result in a double payment and that the plaintiff's insurer was equitably subrogated to the plaintiff's rights to seek recovery from the defendant. *Held*:

1. The trial court properly denied the defendant's motion in limine; although there was no dispute that the plaintiff's insurer paid the plaintiff on an insurance claim submitted by her in relation to the incident, the court observed that there may have been a discrepancy between the amount the plaintiff paid for the repairs and the amount she was reimbursed by her insurer, and the court addressed the defendant's double recovery claim when it adjudicated his motion for remittitur, as to which the parties had created an evidentiary record.

2. The defendant could not prevail on his claim that the trial court improperly denied his motions for remittitur and to open the judgment, because the court's denial of these motions resulted in a double recovery by the plaintiff, and a double payment by the defendant with respect to property damage expenses the plaintiff had incurred: the court properly declined to consider the defendant's double payment and equitable subrogation claims in deciding his motion for remittitur, as this court's review of the defendant's pleadings and prejudgment motions revealed no mention of the issues of double payment and equitable subrogation, the defendant did not assert payment as a special defense or plead a right of setoff, and, although the defendant asserted in his motion for remittitur that he was seeking to prevent a double recovery, the defendant did not refer to his automobile liability insurer or present his claims of double payment and equitable subrogation therein; rather, the record revealed that the defendant raised his double payment claim for the first time during argument on his motion for collateral source reduction, which immediately preceded argument on his motion for remittitur, the defendant's trial counsel did not cite any legal authority in presenting that particular argument, counsel made no perceivable reference to his related equitable subrogation claim during argument on his postverdict motions, and the defendant failed to raise his equitable subrogation claim to the court in any manner during the prejudgment proceedings; moreover, the court did not err by declining to consider the defendant's double payment and equitable subrogation claims in deciding the defendant's motion to open, when he failed to raise them, either adequately or at all, to the court prior to it rendering judgment in the plaintiff's favor; furthermore, even if this court were to agree with the defendant that he properly raised his double payment and equitable subrogation claims, the defendant could not prevail on the merits because, even though the defendant claimed that his automobile liability insurer reimbursed the plaintiff's homeowners insurer for the property damage expenses incurred by the plaintiff that constituted the majority of the economic damages awarded by the jury, the evidence in the record demonstrated only that the defendant's insurer made a payment to the plaintiff's insurer in relation to the plaintiff's insurance claim, it did not

include a dollar for dollar breakdown of the payment, which did not match the sum remitted by the plaintiff's insurer to the plaintiff, and, therefore, it was unknown what portion, if any, of the defendant's insurer's payment was intended to recompense the plaintiff's insurer for the property damage expenses incurred by the plaintiff, and without evidence detailing the precise nature of the payment by the defendant's insurer, the defendant's double payment and equitable subrogation claims failed.

Argued November 18, 2019—officially released May 26, 2020

*Procedural History*

Action to recover damages for, inter alia, the defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Pierson, J.*, denied the defendant's motion to preclude certain evidence; thereafter, the case was tried to the jury before *Pierson, J.*; verdict and judgment for the plaintiff; subsequently, the court denied the defendant's motion for remittitur, and the defendant appealed to this court; thereafter, the court denied the defendant's motion to open the judgment, and the defendant filed an amended appeal. *Affirmed.*

*Jack G. Steigelfest*, for the appellant (defendant).

*Lawrence C. Sgrignari*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The defendant, Robert D. Windom, appeals from the judgment of the trial court denying various motions that he filed in the present action commenced by the plaintiff, Kristine S. Anthis, in favor of whom the court rendered judgment following a jury trial. On appeal, the defendant claims that the court improperly denied his (1) motion in limine, (2) motion for remittitur, and (3) motion to open, which, the defendant contends, effectively resulted in a double recovery by the plaintiff and a double payment by the defendant with respect to property damage expenses incurred by the plaintiff. We affirm the judgment of the trial court.

The following facts, which are undisputed, and procedural history are relevant to our resolution of this appeal. On January 12, 2017, the plaintiff commenced the present action, sounding in negligence and recklessness, against the defendant, arising out of a July 12, 2015 incident during which the defendant, while attempting to back his motor vehicle toward the garage of his residence, lost control of his vehicle, which struck the front of the plaintiff's neighboring home.[1] On March 23, 2017, the defendant filed an answer, in which he did not assert any special defenses.

On April 10, 2018, the plaintiff filed a trial management report, stating in relevant part that "[t]he plaintiff expects to file a motion in limine seeking to preclude the defendant from referencing and/or introducing evidence of any documentation which relates to [the] plaintiff's recovery of damages from her [homeowners] insurer." The plaintiff did not file any such motion thereafter.

The matter was tried to the jury in August, 2018. On August 21, 2018, prior to the start of evidence, the defendant filed a motion in limine, dated August 20, 2018, seeking an order "prohibiting the plaintiff from offering into evidence the cost of [her] home repairs," which the defendant contended were paid for by the plaintiff's homeowners insurer, or, in the alternative, permission to "cross-examine the plaintiff on the fact that her home repair expenses were paid for by her own [homeowners] insurance company." The same day, following argument, the trial court denied the motion in limine. At trial, evidence was admitted into the record reflecting that, in the aftermath of the July, 2015 incident, the plaintiff and her spouse had paid, among other things, $36,750 in home repair expenses and incurred $14,264.23 in temporary housing costs.[2]

On August 22, 2018, the jury returned its verdict in favor of the plaintiff, awarding $55,738.54 in compensatory damages, consisting solely of economic damages,[3] as to all counts. The jury also awarded the plaintiff punitive damages, the amount of which was later determined by the court, on the basis of the jury's finding

that she had proven common-law recklessness.

On August 27, 2018, the defendant filed a motion for collateral source reduction and a motion for remittitur. In both motions, the defendant asserted that, in order to prevent a double recovery by the plaintiff, the court had to reduce the jury's verdict to account for insurance payments received by the plaintiff from her homeowners insurer. On August 30, 2018, the plaintiff filed objections to both motions. On September 17, 2018, the court held a hearing on those postverdict motions. The same day, the court denied the motion for collateral source reduction and sustained the plaintiff's objection thereto. On September 18, 2018, the court denied the motion for remittitur and sustained the plaintiff's objection thereto. Thereafter, the court rendered judgment on the jury's verdict in the amount of $75,723.05, consisting of $55,738.54 in compensatory damages, $19,205.25 in punitive damages, and $779.26 in taxed costs. On October 9, 2018, the defendant filed this appeal.

On November 7, 2018, the defendant filed a motion requesting that the trial court open the judgment and reconsider its decision declining to reduce the jury's verdict. On November 15, 2018, the plaintiff filed an objection thereto. On December 21, 2018, after hearing argument on December 10, 2018, the court denied the motion to open. The defendant then amended this appeal to encompass that decision. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the trial court improperly denied his motion in limine. We disagree.

We begin by setting forth the standard of review governing this claim. "A trial court may entertain a motion in limine made by either party regarding the admission or exclusion of anticipated evidence. . . . The judicial authority may grant the relief sought in the motion or other relief as it may deem appropriate, may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding. . . . [T]he motion in limine . . . has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it

did." (Citation omitted; internal quotation marks omitted.) *McBurney* v. *Paquin*, 302 Conn. 359, 377–78, 28 A.3d 272 (2011).

In his motion in limine, the defendant moved to preclude the plaintiff from offering evidence regarding her home repair costs, which he asserted had been paid for by her homeowners insurer. The defendant contended that "[t]he plaintiff should not be able to double dip, and unfairly suggest to the jury that all [of] her extensive repair costs were never paid," because, according to the defendant, this would create a risk that the jury might improperly inflate any noneconomic damages that it chose to award or be swayed to award punitive damages.

During argument on the motion in limine, the defendant's trial counsel asserted that it was inequitable for the plaintiff to "double dip" by seeking economic damages that included property damage costs paid for by her homeowners insurer. The defendant's trial counsel further argued that the plaintiff intended to offer into evidence personal checks reflecting payments made by her for the home repairs, which would falsely suggest to the jury that she had paid for them with her own funds without the contribution of insurance proceeds. In response, the plaintiff's counsel argued that the motion in limine was procedurally improper because (1) the defendant had failed to file a trial management report indicating that he intended to file any such motion, and (2) the defendant's trial counsel had represented in chambers that he would not be "inquiring on issues of insurance." The plaintiff's counsel further argued that the plaintiff would be prejudiced if evidence regarding her property damage expenses was precluded or, alternatively, the defendant was permitted to cross-examine her on the insurance payments remitted to her by her insurer. Additionally, the plaintiff's counsel argued that the plaintiff had not been made whole by the insurance payments and that her insurer was a collateral source, such that the insurance proceeds that it had remitted to her could not be deducted from the jury's economic damages award. Thereafter, the court asked the plaintiff's counsel whether it was his position "that to the extent the defendant is entitled to any sort of reduction for amounts received by [the plaintiff] that that reduction would be addressed appropriately in some sort of posttrial proceeding." The plaintiff's counsel responded that the defendant "would have, obviously, the opportunity to file posttrial motions and the court would then have to entertain those issues." The court thereafter denied the defendant's motion in limine.

On appeal, the defendant asserts that the court abused its discretion in declining to preclude evidence regarding the plaintiff's home repair costs because her homeowners insurer had paid those expenses and, thus,

admitting evidence of those costs enabled the plaintiff to seek a double recovery for the same expenses in the form of economic damages.[4] At the time of the court's denial of the motion in limine, however, although there was no dispute that the plaintiff's insurer had paid the plaintiff on an insurance claim submitted by her in relation to the July, 2015 incident, the total amount of the plaintiff's home repair expenses and the total amount and nature of the insurance proceeds received by the plaintiff were unknown. Indeed, during argument, the court observed that "the fact is that there may actually be a discrepancy between the amount [the plaintiff] paid out for [the] repairs and . . . the amount [the plaintiff] was reimbursed by [her] insurer." The court later addressed the defendant's double recovery claim in adjudicating his motion for remittitur, with respect to which the parties created an evidentiary record. Under these circumstances, we find no error in the court's denial of the defendant's motion in limine.[5]

## II

We next turn to the defendant's intertwined claims that the trial court improperly denied his motion for remittitur and his motion to open.[6] These claims are unavailing.

We begin by setting forth the relevant standards of review. With respect to a motion for remittitur, "the trial court is required to review the evidence in the light most favorable to sustaining the verdict. . . . Upon completing that review, the court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant. . . . The ultimate test [that] must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption. . . . The court's broad power to order a remittitur should be exercised only when it is manifest that the jury [has awarded damages that] are contrary to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions. . . . Accordingly, we consistently have held that a court should exercise its authority to order a remittitur rarely—only in the most exceptional of circumstances . . . and [when] the court can articulate very clear, definite and satisfactory reasons . . . for such interference. . . .

"[O]ur review of the trial court's decision [to grant or to deny remittitur] requires careful balancing. . . . [T]he decision whether to reduce a jury verdict because it is excessive as a matter of law . . . rests solely within the discretion of the trial court. . . . [T]he same general principles apply to a trial court's decision to order a remittitur. [Consequently], the proper standard of review . . . is that of an abuse of discretion. . . .

[T]he ruling of the trial court . . . is entitled to great weight and every reasonable presumption should be given in favor of its correctness." (Citations omitted; internal quotation marks omitted.) *Ashmore* v. *Hartford Hospital*, 331 Conn. 777, 782–83, 208 A.3d 256 (2019).

With regard to a motion to open, "[t]he principles that govern motions to open or set aside a civil judgment are well established. Within four months of the date of the original judgment, Practice Book [§ 17-4] vests discretion in the trial court to determine whether there is a good and compelling reason for its modification or vacation. . . . The exercise of equitable authority is vested in the discretion of the trial court . . . to grant or to deny a motion to open a judgment. The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Internal quotation marks omitted.) *Jepsen* v. *Camassar*, 196 Conn. App. 97, 119–20,      A.3d      (2020).

In his motion for remittitur, the defendant moved for a reduction of the jury's verdict "in order to account for homeowners insurance payments already received by the plaintiff." The defendant asserted that the economic damages awarded by the jury correlated to the property damage costs incurred by the plaintiff, and that the majority of the property damage expenses had been paid for by the plaintiff's insurer such that a remittitur was necessary to prevent the plaintiff from receiving a double recovery. The defendant cited *Gionfriddo* v. *Gartenhaus Cafe*, 211 Conn. 67, 71, 557 A.2d 540 (1989), for the proposition that "a plaintiff may be compensated only once for his or her damages for the same injury." In her objection, the plaintiff argued that our Supreme Court in *Gionfriddo* determined that a plaintiff could not recover damages from a joint tortfeasor after having recovered identical damages for the same injury in a prior action against the other joint tortfeasors. The plaintiff argued that the defendant's reliance on *Gionfriddo* was misplaced because the present action did not involve joint tortfeasors. The plaintiff further argued that the resolution of the defendant's motion was controlled by our Supreme Court's decision in *Saint Bernard School of Montville, Inc.* v. *Bank of America*, 312 Conn. 811, 95 A.3d 1063 (2014), in which the court concluded that a defendant was not entitled to a reduction of a plaintiff's verdict to account for insurance proceeds received by the plaintiff because "[u]nder case law dating back more than one century, th[e] court has held that a defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his [or her] act where payment comes from a collateral source, wholly independent of him [or her]." (Internal quotation marks omitted.) Id., 841.

During the hearing on the defendant's motions for collateral source reduction and remittitur, the court admitted into evidence two exhibits offered by the defendant's trial counsel. The first exhibit was a cover letter, dated October 20, 2015, accompanied by a packet of documents, sent by the plaintiff's homeowners insurer to the defendant's automobile liability insurer, requesting that the defendant's insurer pay $52,786.20 as reimbursement for the payment that it made to the plaintiff on her insurance claim. The second exhibit was a one page financial log indicating that a payment in the amount of $48,395.22 was remitted by the defendant's insurer to the plaintiff's insurer on February 12, 2016. The financial log categorized the payment as a "Loss Payment" with respect to "KRISTINE ANTHIS/ Property Damage." The financial log provided no additional details concerning the nature of that payment.[7]

In arguing in support of the motion for remittitur, the defendant's trial counsel asserted that the jury did not hear evidence of the payment by the plaintiff's homeowners insurer to the plaintiff for the property damage costs she incurred, and that maintaining the jury's verdict would provide the plaintiff with a windfall. The court questioned the defendant's trial counsel as to whether the plaintiff was enjoying a double recovery, given that the present case did not involve multiple tortfeasors, and that the plaintiff had paid premiums in order to receive the benefit of the insurance proceeds from her insurer. The defendant's trial counsel responded that the defendant's automobile liability insurer had reimbursed the plaintiff's homeowners insurer for its payment to the plaintiff, such that the present case was distinguishable from a situation in which an insured party simply receives insurance proceeds from his or her insurer. In opposition to the motion for remittitur, the plaintiff's counsel argued that *Saint Bernard School of Montville, Inc.* v. *Bank of America*, supra, 312 Conn. 811, governed. The plaintiff's counsel further argued that the $48,395.22 payment remitted by the defendant's insurer to the plaintiff's insurer did not match the $51,786.20 sum paid to the plaintiff by her insurer,[8] and that the evidence did not detail the nature of the payment by the defendant's insurer to the plaintiff's insurer (i.e., the specific items it covered).

In denying the defendant's motion for remittitur, the court determined that the defendant was seeking a remittitur to prevent a double recovery by the plaintiff, where the plaintiff's homeowners insurer had paid "the great majority of the plaintiff's property damage expenses . . . ." (Internal quotation marks omitted.) The court rejected the defendant's reliance on *Gionfriddo* v. *Gartenhaus Cafe*, supra, 211 Conn. 67, stating that the present action involved neither joint tortfeasors nor satisfaction for a loss that was the subject of multi-

ple judgments. Additionally, citing *Saint Bernard School of Montville, Inc.* v. *Bank of America*, supra, 312 Conn. 841–42, the court observed that the plaintiff had paid premiums in exchange for the coverage provided by her insurer and that, "[i]f there must be a windfall certainly it is more just that the injured person shall profit therefrom, rather than the wrongdoer [being] relieved of his [or her] full responsibility for his [or her] wrongdoing." (Internal quotation marks omitted.)

After the court rendered judgment in the plaintiff's favor and after the defendant filed this appeal, the defendant filed a motion to open the judgment. In that motion, he asserted that, in denying his motion for remittitur, the court addressed the issue of double recovery, but it did not consider the distinct issue of double payment; that is, whether the jury's verdict, in effect, obligated the defendant to pay the plaintiff twice for the same damages. The defendant argued that, although his motions for remittitur and collateral source reduction "on their face focus[ed] on the plaintiff's double recovery . . . the defendant at oral argument on the motions also argued that a failure to reduce the verdict in this case would amount to double payment." The defendant asserted that the payment by his automobile liability insurer to the plaintiff's homeowners insurer, in effect, constituted a payment by him, such that requiring him to pay the economic damages awarded by the jury, consisting of the plaintiff's property damage expenses, would result in a double payment by him. In addition, the defendant argued that the court's reliance on *Saint Bernard School of Montville, Inc.* v. *Bank of America*, supra, 312 Conn. 811, in denying his motion for remittitur was misguided because that case did not address a situation in which a plaintiff's insurer pursues a subrogation claim against a defendant's insurer. The defendant contended that the plaintiff's insurer, after paying the plaintiff for the property damage costs, had become equitably subrogated to the plaintiff's rights to seek recovery from the defendant and that, once the plaintiff's homeowners insurer had pursued the equitable subrogation claim against the defendant's insurer, the plaintiff was barred from seeking damages from the defendant on the basis of the property damage expenses that she had incurred.

In her objection to the motion to open, the plaintiff argued that no good and compelling reason existed to warrant opening the judgment because, inter alia, the defendant had failed to properly raise the issue of double payment before the court in his pleadings or in his postverdict motions. The plaintiff further argued that her loss "exceeds the damages recovered from [her] insurer and the amount [her] insurer recovered from the defendant's insurer . . . ." In a reply brief, the defendant asserted, inter alia, that (1) he raised the double payment issue during argument on his postver-

dict motions and that the parties, during argument on his motion in limine, had agreed to litigate issues regarding insurance payments posttrial, and (2) the plaintiff had been made more than whole with regard to her property damage expenses by way of the insurance proceeds received from her homeowners insurer and the jury's verdict.

In denying the defendant's motion to open, the court first turned to the defendant's double payment claim. Addressing the defendant's assertion that the court had failed to consider his double payment claim in denying his postverdict motions, the court determined that the defendant had failed to timely or properly raise that claim to the court, thereby abandoning it along with his related equitable subrogation claim. Specifically, the court determined that the double payment and equitable subrogation claims were not briefed by the defendant in either his motion for collateral source reduction or his motion for remittitur. The court further determined that the defendant raised the double payment claim for the first time during argument on his postverdict motions, without citation to any relevant legal authority. The court concluded that it had the discretion to decline to consider claims raised for the first time during argument without legal briefing or citation to relevant, supporting legal authority. In addition, observing that a defense based on payment had to be asserted by way of a special defense in accordance with Practice Book § 10-50,[9] the court stated that the defendant had failed to assert a payment defense in his answer and that it would "not allow [the defendant] to raise it for the first time on a postjudgment basis."

Turning next to the issue of double recovery, the court relied on the rationale set forth in its denial of the defendant's motion for remittitur and concluded that the plaintiff was not receiving a double recovery. The court acknowledged the defendant's argument that *Saint Bernard School of Montville, Inc.* v. *Bank of America*, supra, 312 Conn. 811, was distinguishable on the ground that the plaintiff's homeowners insurer in the present case had pursued a subrogation claim against the defendant's automobile liability insurer; however, the court declined to address that argument "in light of the fact that in this case, the defendant did not seasonably or properly raise the issue of double payment . . . ."

The crux of the defendant's claims on appeal is that (1) the jury's verdict obligated him to double pay the plaintiff for her home repair expenses and (2) the plaintiff is barred from seeking recovery for those expenses because her homeowners insurer pursued a subrogation claim against the defendant's automobile liability insurer. The defendant asserts that he adequately raised the issues of double payment and equitable subrogation in his motion in limine, in his motion for remittitur,

and/or during argument on those motions, and, therefore, the court erred by declining to consider those issues in deciding his motion for remittitur and his motion to open. The defendant further asserts that, on the merits of his double payment and equitable subrogation claims, he is entitled to a reduction of the verdict. For the reasons that follow, we are not persuaded.

Our review of the defendant's pleadings and prejudgment motions reveals no mention of the issues of double payment and equitable subrogation. The defendant did not assert payment as a special defense[10] or plead a right of setoff.[11] In his motion in limine, the defendant cursorily stated that "[t]he plaintiff's home repair bills were paid . . . by her [homeowners] carrier, which was in turn reimbursed by the defendant's [automobile] insurance carrier," and that "[the] plaintiff's counsel is aware that the defendant's insurance carrier . . . reimbursed the plaintiff's [homeowners] carrier for most of these expenses"; however, the defendant did not make any cognizable assertion that he was facing a possible double payment, nor did he raise his equitable subrogation claim.[12] In his motion for remittitur, the defendant asserted that he was seeking a remittitur "in order to prevent a double recovery"; however, the defendant did not refer to his automobile liability insurer or present his claims of double payment and equitable subrogation therein.

The record reveals that the defendant raised his double payment claim for the first time during argument on his motion for collateral source reduction, which immediately preceded argument on his motion for remittitur. The defendant's trial counsel stated in relevant part that, "in this case, [the defendant's] insurance company has already paid these damages. . . . [The defendant's insurer], in effect, is being asked to pay this again to the plaintiff and that just doesn't make sense to me." He did not cite any legal authority in presenting that particular argument.[13] During argument on the motion for remittitur, at the outset of which the defendant's trial counsel asserted that "many of the same arguments [raised during argument on the motion for collateral source reduction] apply," counsel again argued that the defendant was being asked to double pay. He did not cite any legal authority in support of that argument.[14] Additionally, the defendant's trial counsel made no perceivable reference to the defendant's related equitable subrogation claim during argument on the defendant's postverdict motions.

In light of the foregoing, the defendant failed to raise his equitable subrogation claim to the trial court in any manner during the prejudgment proceedings. He raised his double payment claim for the first time during argument on his motions for collateral source reduction and remittitur; however, he did not support those claims with citations to any relevant legal authorities. Under

these circumstances, we conclude that the trial court did not err by declining to consider those claims in deciding the defendant's motion for remittitur. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 132 Conn. App. 85, 97, 30 A.3d 38 (2011) (noting that trial court properly exercised discretion not to consider claim raised for first time during argument and without citation to legal authority and, therefore, declining to review claim on appeal), aff'd on other grounds, 311 Conn. 123, 84 A.3d 840 (2014).

We further conclude that the court did not err by declining to consider the defendant's double payment and equitable subrogation claims in deciding the defendant's motion to open, notwithstanding that those claims were briefed and argued in connection therewith. In deciding a motion to open, a trial court is not required to consider a claim raised for the first time therein. See *Hirsch* v. *Woermer*, 184 Conn. App. 583, 593, 195 A.3d 1182, cert. denied, 330 Conn. 938, 195 A.3d 384 (2018). Similarly, a court need not grant a movant a proverbial second bite at the apple by considering a claim raised in a motion to open that the movant had failed to present properly to the court at an earlier juncture. Accordingly, we discern no error in the court's decision not to address the defendant's double payment and equitable subrogation claims when the defendant failed to raise those claims, either adequately or at all, to the court prior to it rendering judgment in the plaintiff's favor.

Even if we were to agree with the defendant that he had properly raised his double payment and equitable subrogation claims to the trial court, the defendant cannot prevail on the merits thereof on the record before us. The defendant's claims are grounded in his contention that his automobile liability insurer reimbursed the plaintiff's homeowners insurer for the property damage expenses incurred by the plaintiff that constitute the majority of the economic damages awarded by the jury. The evidence in the record—in particular, the cover letter and accompanying packet sent by the plaintiff's insurer to the defendant's insurer, and the financial log submitted by the defendant in support of his motions for collateral source reduction and remittitur[15]—demonstrates only that the defendant's insurer made a $48,395.22 payment to the plaintiff's insurer in relation to the plaintiff's insurance claim. The evidence does not include a dollar for dollar breakdown of the $48,395.22 payment, which does not match the $51,786.20 sum remitted by the plaintiff's insurer to the plaintiff. It is unknown what portion, if any, of the payment by the defendant's insurer was intended to recompense the plaintiff's insurer for the property damage expenses incurred by the plaintiff. Without evidence detailing the precise nature of the payment by the defendant's insurer, the defendant's double payment and equitable

subrogation claims fail.[16]

In sum, we reject the defendant's claims that the trial court improperly denied his motion for remittitur and his motion to open.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Counts one and three of the plaintiff's operative complaint sounded in negligence and common law recklessness, respectively. In count two, the plaintiff alleged that (1) the defendant's operation of his motor vehicle violated General Statutes § 14-222, and (2) the defendant's violation of § 14-222 was a substantial factor in causing the injuries, damages, and losses claimed by the plaintiff, enabling her to recover double or treble damages pursuant to General Statutes § 14-295. The plaintiff later withdrew count two.

[2] One of the plaintiff's exhibits indicated that the total sum of temporary housing costs was $16,264.23, which included a $2000 refundable security deposit that the plaintiff did not claim as part of her damages.

[3] As reflected in interrogatories answered by the jury, the economic damages award consisted of the following: $36,750 for home repair expenses; $14,264.23 for temporary housing costs; $149 for the cost of a sonogram for the plaintiff, who was pregnant at the time of the July, 2015 incident; $496.88 for the cost of an emergency tarp placed over the entryway of the home and other related services; and $4078.43 for professional services used by the plaintiff and her spouse to assist them in hiring a contractor to repair the damage to the home. The jury did not award noneconomic damages.

[4] The defendant also contends that evidence of the home repair costs was prejudicial because it "would tend to suggest a starting point for evaluating the noneconomic damages sought by the plaintiff." This argument is unavailing as the jury did not award the plaintiff noneconomic damages.

[5] We also note that the defendant filed the motion in limine shortly before the start of evidence. The defendant did not file a trial management report indicating that any such motion would be filed, and the plaintiff represents that the defendant's trial counsel, in chambers, represented that he did not plan to file motions in limine. During argument on the motion in limine, the defendant's trial counsel conceded that the motion in limine had been filed "late." It was well within the court's discretion to deny the motion in limine under these circumstances, as well.

[6] The defendant is not challenging on appeal the denial of his motion for collateral source reduction.

[7] The court also admitted into evidence as a plaintiff's exhibit a portion of the plaintiff's homeowners insurance policy.

[8] The letter sent by the plaintiff's homeowners insurer to the defendant's automobile liability insurer indicated that the plaintiff's spouse had paid a $1000 deductible, which would be refunded to the plaintiff's spouse upon payment by the defendant's insurer in the amount of $52,786.20 to the plaintiff's insurer.

[9] Practice Book § 10-50 provides in relevant part: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of facts are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus . . . payment (even though nonpayment is alleged by the plaintiff) . . . must be specially pleaded . . . ."

[10] In denying the defendant's motion to open, the trial court determined that the defendant had failed to assert a special defense of payment in compliance with Practice Book § 10-50. We need not consider the effect of the defendant's failure to plead payment as a special defense in resolving his claims on appeal.

[11] Practice Book § 10-54 provides in relevant part: "In any case in which the defendant has either in law or in equity or in both . . . [a] right of setoff . . . against the plaintiff's demand, the defendant may have the benefit of any such setoff . . . by pleading the same as such in the answer . . . ."

[12] During argument on the motion in limine, the defendant's trial counsel made a similar statement, that the defendant's automobile liability insurer had reimbursed the plaintiff's homeowners insurer for its payment to the plaintiff. The defendant's trial counsel presented no cognizable arguments, however, concerning the defendant's claims of double payment and equitable subrogation.

[13] Earlier during argument on the motion for collateral source reduction,

the defendant's trial counsel cited *Rathbun* v. *Health Net of the Northeast, Inc.*, 315 Conn. 674, 110 A.3d 304 (2015), to support the proposition that "Connecticut for many, many years has not allowed double recoveries." In *Rathbun*, our Supreme Court concluded that General Statutes § 17b-265 (a) authorized a designated assignee of the Department of Social Services to seek reimbursement from Medicaid recipients for medical costs recovered by the recipients from liable third parties. Id., 693, 703. *Rathbun* did not involve a claim of double payment. Later during argument, the defendant's trial counsel cited *Jones* v. *Riley*, 263 Conn. 93, 818 A.2d 749 (2003), which, he posited, illustrated why collateral source hearings are geared to prevent double recoveries. In *Jones*, our Supreme Court concluded that the plaintiff was entitled to offset a reduction of her economic damages award by the amount of premiums she had paid attributable to the medical payments coverage provision of her automobile liability insurance policy only, rather than by the amount of premiums she had paid for the entire policy. Id., 94–95. *Jones*, likewise, did not concern a double payment claim.

[14] At the beginning of argument on the motion for remittitur, the defendant's trial counsel cited *Rent-A-PC, Inc.* v. *Rental Management, Inc.*, 96 Conn. App. 600, 901 A.2d 720 (2006), which, he contended, contained a "very good discussion by [this court] citing a lot of other older cases on how trial courts should not permit a double recovery." In *Rent-A-PC, Inc.*, this court affirmed the trial court's judgment rendered in favor of the plaintiff on its unjust enrichment claim and on a breach of contract claim raised by the defendant in a counterclaim. Id., 601–604. *Rent-A-PC, Inc.*, did not involve a claim of double payment.

[15] On September 19, 2018, one day after the trial court denied the defendant's motion for remittitur, the defendant filed a "supplemental memorandum" seeking to present to the court additional documents "evidencing that the defendant's insurance carrier . . . paid the majority of the plaintiff's property damage expenses." The majority of the appended documents appears to be a copy of the cover letter and a portion of its accompanying packet, which were introduced into evidence by the defendant during the hearing on his postverdict motions. The remaining appended documents include a purported check from the defendant's automobile liability insurer payable to the plaintiff's homeowners insurer in the amount of $48,395.22 and an apparent invoice regarding the payment by the defendant's insurer. These appended documents were not properly before the court, as the defendant filed them following the court's denial of his motion for remittitur and without permission from the court. Even if the defendant had timely and properly submitted them, and the plaintiff had no objection to them, we are not convinced that these appended documents, in conjunction with the evidence properly in the record, establish that the payment by the defendant's insurer to the plaintiff's insurer operated to reimburse the plaintiff's insurer with respect to the property damage expenses incurred by the plaintiff and awarded to her as economic damages by the jury.

[16] The defendant asserts that, in the event that we agree with the trial court that he failed to present his double payment and equitable subrogation claims properly to the court, the court committed plain error by failing to reduce the jury's verdict or, in the alternative, requests that we exercise our supervisory authority pursuant to Practice Book § 60-2 to review the merits of his claims. As we have concluded in this opinion, even assuming that the defendant had properly raised these claims to the trial court, the defendant cannot prevail on the merits thereof on the record before us. Thus, we need not address further the defendant's request to invoke these extraordinary remedies.

--------------------------------